## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Donald A and Theresa A. Baker | ) | Case No. 08-10077 (CSS) |
| | ) | |
| Debtors. | ) | Reference Docket No.  25 |
| | ) | |

### OPINION[1]

Stephen P. Doughty
Lyons, Doughty & Veldhuis
15 Ashley Place, Suite 2B
Wilmington, DE  19804

Attorney for Ford Motor
Credit Company

Dated: June 10, 2008

Sontchi, J. _Clfhh Shtl_

William F. Jaworski, Jr.
1274 S. Governors Avenue
Dover, DE  19901

Attorney for Debtors

Before the Court is the Debtors' Emergency Motion to Reopen and for Rule to Show Cause for Willful Violation of a Court Order for Wrongful Repossession of a Motor Vehicle (the "Motion for Rule to Show Cause") filed by Donald and Theresa Baker (the "Debtors").  The Debtors argue that Ford Motor Credit Company (the "Creditor") wrongfully repossessed the Debtors' motor vehicle where the Debtors and Creditor timely entered into a reaffirmation agreement under section 524 of the Bankruptcy Code but the Court refused to

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

approve the reaffirmation agreement because it constituted an undue hardship on the Debtors.

The Court finds that, under the Third Circuit's opinion in *Price*,[2] the Debtors' car loan "passed through" the bankruptcy case unaffected because the Debtors timely entered into a reaffirmation agreement and they are current with their payments. The Court further finds that there was no basis for repossession under Delaware law because the only default that the Creditor could assert was based on an unenforceable *ipso facto* clause. Finally, because the repossession of the Debtors' vehicle was a violation of the discharge injunction, the Court will order the Creditor to return the vehicle and will award compensatory damages to the Debtors.

## Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1334. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409(a). This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B), (G) and (O).

## Procedural and Factual Background

The Debtors filed their Chapter 7 petition on January 10, 2008. On April 7, 2008, a "Pro Se Reaffirmation Agreement (Without Attorney Affidavit)" dated April 2, 2008 by and between the Debtors and the Creditor (the "Reaffirmation Agreement") was filed with the Court [Docket No. 17]. The Reaffirmation Agreement provides for the Debtors' reaffirmation of their car loan with the

---

[2] *Price v. Delaware State Police Fed. Credit Union (In re Price)*, 370 F.3d 362, 372 (3d Cir. 2004).

Creditor.  As set forth in the Reaffirmation Agreement, the Debtors are required to make 48 monthly payments of $348.90, commencing on February 15, 2008. The loan is secured by a first lien on the Debtors' vehicle.

In Part D of the Reaffirmation Agreement, Ms. Baker states that the Debtors' monthly income is $4,220.33 and their monthly expenses are $4,020.33, leaving $200 per month to service the proposed reaffirmed monthly payment of $348.90.[3]  These amounts are identical to those set forth in the Debtors' Schedules I and J [Docket No. 1].  Furthermore, in Part C of the Reaffirmation Agreement, Debtors' counsel states that he cannot certify that the Reaffirmation Agreement does not present an undue hardship on the Debtors, although he notes that the Debtors have made all of their monthly payments.  Thus, the Reaffirmation Agreement is presumed to be an undue hardship on the Debtors because the Debtors' monthly income minus expenses does not leave a sufficient amount to make the proposed payments.  To rebut the presumption of undue hardship Ms. Baker states in Part D of the Reaffirmation Agreement that she needs the vehicle "to go to work and [she has] made all payments."

On May 7, 2008, the Court convened a hearing to consider the Reaffirmation Agreement.  At that hearing, the Court inquired whether there had been any change in the Debtors' monthly income or expanses.  Debtors' counsel indicated there had been no such change, although he proffered the Debtors'

---

[3] Notwithstanding that this is a joint case, the Reaffirmation Agreement was completed by Ms. Baker.

testimony that the Debtors were current on their monthly payments and intended to remain so.  On May 7, 2008, the Court entered an Order declining to approve the Reaffirmation Agreement.

The Court granted the Debtors a discharge on April 15, 2008.  The case was closed on June 3, 2008.

On June 9, 2008, the Creditor repossessed the Debtors' vehicle.  Later that day, the Debtors filed the Motion for Rule to Show Cause, which was served on the Creditor via facsimile.  On June 10, 2008, the Court entered an Order shortening time in connection with Motion for Rule to Show Cause and convened an evidentiary hearing the same day.

At the hearing, Creditor acknowledged that the Debtors were current on their monthly payments and the sole basis for repossessing the vehicles was the failure of the Reaffirmation Agreement to be approved by the Court.[4]  The Court noted at the Hearing that Creditor had been provided with limited notice but, nonetheless, held that the issue was ripe for decision because the Debtors were faced with an immediate threat of harm.

<u>Legal Discussion</u>

**A.     The "Fourth Option" for Retention of Secured Property**

The Debtors argue that the car loan "passed through" the bankruptcy case unaffected because the Debtors timely entered into a reaffirmation agreement and they are current with their payments.   They rely on the Third Circuit

---

[4] This evidence is admissible under F.R.E. 801(d)(2) as an admission of a party opponent.

decision in *Price*, in which the Court held that the enumeration of three options for treatment of secured property under former section 521(2) - i.e., surrender, redemption or reaffirmation - did not preclude the debtor from exercising a so-called "fourth option" - i.e., retaining the property while remaining current on payments.[5]   In 2005 (after the Third Circuit issued its opinion in *Price*), Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").   Included in the sweeping changes under BAPCPA were several amendments that arguably render the decision in *Price* no longer correct.[6]   Under the facts in this case, the Court finds that the changes under BAPCPA have no effect and *Price* is controlling.

> **1.      Section 521(a)(2)(A)**

In *Price*, the Third Circuit emphasized the following language of section 521: "the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying . . . that such property is claimed as exempt, that the debtor intends to redeem such property, or that the  debtor intends to reaffirm debts secured by such property." As this language has not been changed by any of the amendments contained in BAPCPA the "pass through" option remains available.[7]

---

[5] *In re Price*, 370 F.3d at 372.

[6] *See, e.g., In re Anderson*, 348 B.R. 652, 655-59 (Bankr. D. Del. 2006).

[7] *Id.* at 656 (citing *In re Donald*, 343 B.R. 524, 532 (Bankr. E.D.N.C. 2006)).

2.      Section 521(a)(6)

Under BAPCPA, section 521(a)(6) was added to the Bankruptcy Code.  It

provides:

> [I]n a case under chapter 7 of this title in which the debtor is an
> individual, [the debtor shall] not retain possession of personal
> property as to which a creditor has an allowed claim for the
> purchase price secured in whole or in part by an interest in such
> personal property unless the debtor, not later than 45 days after the
> first meeting of creditors under section 341 (a), either –
>
> > (A) enters into [a reaffirmation] agreement with the creditor
> > pursuant to section 524(c) with respect to the claim secured
> > by such property; or
> >
> > (B) redeems such property from the security interest
> > pursuant to section 722.
>
> If the debtor fails to so act within the 45-day period referred to in
> paragraph (6), the stay under section 362(a) is terminated with
> respect to the personal property of the estate or of the debtor which
> is affected, such property shall no longer be property of the estate,
> and the creditor may take whatever action as to such property as is
> permitted by applicable nonbankruptcy law. . . .[8]

In this case, the Debtors and the Creditor entered into the Reaffirmation

Agreement within the 45 days specified in the statute.  Thus, regardless of

whether the Creditor has "an allowed claim,"[9] the automatic stay remained in

place until the discharge was entered.[10]

---

[8] 11 U.S.C. §§ 521(a)(6) and (7).

[9] *See Anderson*, 348 B.R. at 356-57 (discussing whether section 521(a)(6) is available for secured creditors in a no-asset chapter 7 case since the notice sent to creditors in such cases advises that claims should not be filed until the creditor gets notice that assets have been located from which a distribution can be made).

[10] 11 U.S.C. § 362(c)(2)(C).

**3.     Sections 521(a)(2)(C) and 362(h)(1)**

As noted earlier, the language on which the Third Circuit relied in *Price* was not changed by BAPCPA.  Section 521(a)(2) was amended, however, to provide that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, *except as provided in section 362(h).*"[11]  Section 362(h), in turn, provides:

> In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a) (2) –
>
> > (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
> >
> > (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.[12]

Thus, section 362(h) provides that the stay will be terminated and the collateral will no longer be property of the estate if the debtor fails to file and

---

[11] 11 U.S.C. § 521(a)(2)(C) (emphasis added).

[12] 11 U.S.C. § 362(h).

perform a statement of intention to surrender, redeem, reaffirm or, in the case of leased property, assume the unexpired lease.  Courts have held that the proviso at the end of section 521(a)(2)(C) referencing section 362(h) trumps the "if applicable" language in section 521(a)(2)(A).  For example, Chief Judge Walrath noted in *Anderson* that section 362(h) does not mention "a fourth option . . . or even language (such as the Third Circuit found in *Price*) that would suggest a fourth option exists."[13]  As the debtor in *Anderson* had filed a statement of intention but never performed the stated intention, i.e., reaffirmed the debt, the Court held that, under the plain meaning of section 362(h), the stay was lifted 30 days after the first date set for the meeting of creditors.[14]

In this case, the Debtors filed a statement of intention that did not indicate one of the three options in that section but instead stated the debtor's intention to retain the collateral and continue to make regular payments but, nonetheless, timely entered into the Reaffirmation Agreement.[15]  Thus, this case is distinguished from those where the debtor failed to file a statement of intention,[16] filed a statement of intention to reaffirm but did not reaffirm the debt,[17] or filed a statement of intention that did not indicate one of the three

---

[13] *Anderson*, 348 B.R. at 658.

[14] *Id.*

[15] *In re Bower*, 2007 Bankr. LEXIS 2580, No. 07-60126, at *6, n. 2 (Bankr. D. Or. July 26, 2007) ("Although the Statement of Intention did not indicate the Debtor's intention with respect to the collateral, the defect was cured by Debtor's timely execution of the agreement to reaffirm.).

[16] *In re Brown*, 2006 Bankr. LEXIS 561, No. 05-35011, at *1 (Bankr. N.D. Fla. March 13, 2006).

[17] *Anderson*, 348 B.R. at 658.

options in that section but did not cure by entering into a reaffirmation agreement.[18] That the Court refused to approve the Reaffirmation Agreement because it would constitute an undue hardship on the Debtors, the effect of which is simply to make the Reaffirmation Agreement unenforceable, is of no moment.

To the extent that the Court in *Anderson* held that the "fourth option" is no longer available, regardless of the facts, this Court respectfully disagrees. The Court in *Price* based its holding on the language of section 521(a)(2), which has not changed, as well as the "context of the [Bankruptcy] Code," which also remains unchanged.[19]  For example, the Third Circuit relied on certain text in section 521(2)(B) that has not changed.[20]  In addition, the Third Circuit examined section 521 as a whole and found it to be procedural rather than substantive.[21]

Admittedly, the Third Circuit found the text of section 521(2)(C), *which at the time did not reference section 362(h),* "to be of enormous aid in [the] reading of section 521(2)(A)" in that "Congress has directed that courts afford debtors the rights provided elsewhere in the Code, specifically telling us not to read section 521(2)(A) or (B) as impinging on the substantive rights guaranteed by other

---

[18] *In re Craker*, 337 B.R. 549, 551 (Bankr. M.D.N.C. 2006); and *In re Rowe*, 342 B.R. 341, 343-44 (Bankr. D. Kan. 2006).

[19] *Price*, 370 F.3d at 375.

[20] *Id*. at 371-72.

[21] *Id*. at 374-75.

provisions."[22]  The Court went on to note that its examination of the substantive rights provided elsewhere in the Bankruptcy Code, which the Court discussed at length, "guides us to conclude that although unstated in section 521(2), debtors do have the option to retain property while staying current on loan payments . . . because, when viewed as a whole, the Bankruptcy Code allows debtors to retain collateral, and keep current on their loans, so long as that collateral is adequately protected."[23]

This Court rejects the argument that section 362(h), which provides for relief from the automatic stay under limited circumstances, trumps the Third Circuit's holding, based, in part, on its interpretation of the overarching purpose of the Bankruptcy Code, that in certain circumstances debtors have the option to retain property while staying current on loan payments.  A case such as this where a debtor has timely entered into a reaffirmation agreement (regardless of whether the agreement is approved by the court) and the debtor remains current on its debt is just such a circumstance.[24]

**B.    No Right to Repossess Vehicle Under Delaware Law**

The Debtors argue that the Creditor did not have the right to repossess the vehicle under Delaware state law because they were not in payment default on

---

[22] *Id*. at 372.

[23] *Id*.

[24] This holding is in accord with several other bankruptcy courts that have addressed this issue. *In re Blakely*, 363 B.R. 225, 232 (Bankr. D. Utah 2007); *In re Husain*, 364 B.R. 211, 218-19 (Bankr. E.D. Va. 2007); *In re Moustafi*, 371 B.R. 434, 438-39 (Bankr. D. Ariz. 2007); and *In re Chim*, 381 B.R. 191, 198 (Bankr. D. Md. 2008).

their loan.    As the Debtors are current on their payments, the only avenue
available for the Creditor in this case is to assert that the filing of bankruptcy by
the Debtors constitutes a default under the loan.[25]    Such *ipso facto* clauses in
contracts are generally unenforceable against debtors, even after discharge, but
there are limited exceptions.   For example, section 521(d) of the Bankruptcy Code
provides that:

> (d) If the debtor fails timely to take the action specified in
> subsection (a)(6) of this section, or in paragraphs (1) and (2) of
> section 362(h), with respect to property . . . as to which a creditor
> holds a security interest . . . nothing in this title shall prevent or
> limit the operation of a provision in the underlying . . . agreement
> that has the effect of placing the debtor in default under such . . .
> agreement by reason of the occurrence, pendency, or existence of a
> proceeding under this title or the insolvency of the debtor. Nothing
> in this subsection shall be deemed to justify limiting such a
> provision in any other circumstance.[26]

In interpreting section 521(d), courts have noted that it provides only that
*ipso facto* clauses are enforceable and that the court must still determine if, under
state law, the clause creates a default that would allow repossession.[27]    In this
case, the Debtors timely met their obligations under section 521(a)(6) and
362(h).[28]    Thus, the Court need not determine whether an *ipso facto* clause is
enforceable under Delaware law because the exception in section 521(d) allowing

---

[25] At the hearing, the Debtors proffered evidence that the Creditor stated that the sole basis for
repossessing the vehicles was the failure of the Reaffirmation Agreement to be approved by the
Court.  That is not an event of default under the loan agreement.

[26] 11 U.S.C. § 521(d).

[27] *Rowe*, 342 B.R. at 351.

[28] *See, supra,* pp.5-10.

for limited enforcement of such clauses is not met in this case.  In short, the Creditor had no right under state law to repossess the vehicle.[29]

## C.    Remedy for Violation of the Discharge Injunction

As noted earlier, the entry of the discharge terminated the automatic stay.[30]   Unlike a violation of the automatic stay, violation of the discharge injunction does not give rise to statutory damages.[31]   Rather, courts use their inherent civil contempt power under section 105 to provide a remedy for violations of the discharge injunction.[32]   "Sanctions for civil contempt serve two purposes: (1) to coerce the disobedient party into compliance with the court's order; and (2) to compensate for losses sustained by the disobedience."[33]

The Debtors ask the Court order the Creditor:

1.    to return immediately the vehicle at Creditor's expense to the Debtors.

2.    to reimburse the Debtors for lost wages, if any, arising from the Debtors' loss of possession of their vehicle.

3.    to pay consequential and/or punitive damages.

---

[29] Of course, the Creditor continues to have the right to assert any *valid* default under the loan agreement and repossess the motor vehicle on the basis of such default. *Anderson*, 348 B.R. at 660 ("Section 9-609 [of the Uniform Commercial Code] . . . provides that a secured party may exercise self-help repossession "[a]fter default," . . . 6 Del. C. § 9-609.  What constitutes a "default" is set forth in the parties' security agreement.  Under section 9-201, "a security agreement is effective according to its terms between the parties" except as otherwise provided by state consumer protection laws or laws regulating "the rates, charges, agreements and practices for loans, credit sales, or other extensions of credit." *Id.* § 9-201(a) & (b)).

[30] *See, supra,*  n. 10.

[31] *Anderson*, 348 B.R. at 661.

[32] *Id*. (citing *In re Meyers*, 341 B.R. 61, 64-5 (Bankr. E.D. Pa. 2006)).

[33] *In re Meyers*, 344 B.R. at 66.

4.      to pay the Debtors' attorneys' fees and costs relating to the Motion for Rule to Show Cause.

The Court will hold the Creditor in contempt and order the Creditor to return immediately the vehicle at Creditor's expense to the Debtors.  The Court will also award compensatory damages, including, without limitation, reimbursement for lost wages (if any) and attorneys' fees and costs.[34]   The Court will not award punitive damages at this time because this issue has not been previously decided in this Court and there is a split of authority among various bankruptcy courts as to the interpretation of the applicable provisions.  The Court finds that these sanctions should be sufficient to deter future conduct in violation of the discharge injunction.[35]

## Conclusion

Under the Third Circuit's opinion in *Price*, because the Debtors timely entered into a reaffirmation agreement (regardless of whether the agreement was approved by the Court) they may retain their vehicle while staying current on their loan payments.  The Court further finds that a default based upon the Debtors' filing of bankruptcy is an unenforceable *ipso facto* clause because the Debtors timely entered into a reaffirmation agreement (regardless of whether the agreement was approved by the Court).  Finally, the Court holds the Creditor in civil contempt, orders return of the vehicle and awards compensatory damages

---

[34] The Court will hold a subsequent hearing to determine the amount of compensatory damages.

[35] Punitive damages may be available, however, for any future violations of the discharge injunction.

to the Debtors because the Creditor repossessed the vehicle in violation of the discharge injunction.   The request for punitive damages is denied without prejudice.   An order will be issued.[36]

---

[36] The Court will reopen the Debtors' case for the limited purposes of entering this Opinion and an Order granting in part and denying in part the Motion for Rule to Show Cause.  In addition, the Court will conduct an evidentiary hearing and award compensatory damages after which the Debtors' case will be closed.